■ MADELINE RODGERS, as President of the Schomburg Coalition, et al., Respondents, v EDWARD I. KOCH, as Mayor of the City of New York, et al., Defendants, and NEW YORK PUBLIC LIBRARY et al., Appellants. — Order of the Supreme Court, New York County (Robert E. White, J.), entered on December 26, 1984, which, *inter alia,* denied the motion by defendants Robert Morris, the New York Public Library, and Astor, Lenox and Tilden Foundations to dismiss the complaint as against them, is reversed, on the law, to the extent appealed from, and the motion to dismiss granted, without costs or disbursements.

Order of the Supreme Court, New York County (Robert E. White, J.), entered on December 26, 1984, which denied the motion by defendants, the University of the State of New York and the Education Department of the State of New York, to dismiss the complaint as against them, is reversed, on the law, to the extent appealed from, and the motion to dismiss granted, without costs or disbursements.

Plaintiffs are certain individuals and organizations active in their community who instituted this declaratory judgment action to challenge the appointment of defendant Robert Morris as chief of the Rare Books, Manuscripts and Archives section at the Schomburg Center for Research in Black Culture, a part of the Research Libraries Division of the New York Public Library. The New York Public Library is chartered by the Board of Regents of the University of the State of New York and is a private, separate legal entity governed by an independent board of trustees. It is plaintiffs' contention that the viability of the Schomburg Center is being undermined by the appointment of Robert Morris as an archivist there. However, as found by Special Term, Morris' "academic and professional credentials are noteworthy." He holds a doctorate in history from the University of Chicago, has published widely in the areas of black, reconstruction and southern history and has an extensive background in manuscript and archival management.

Plaintiffs allege that in appointing Morris, the New York Public Library "had conceived and engineered discriminatory designs for the purpose of hiring an insensitive and unqualified caucasian for the important role of protecting, preserving and expanding the documentation of the history and culture of African peoples at the Schomburg Center, while simultaneously ousting a qualified female of African descent from said role." The woman referred to is an assistant archivist who had unsuccessfully applied for the position for which Morris was ultimately retained. She was purportedly deemed unqualified because of her lack of reading knowledge of French, a necessity for the job in view of the vast number of volumes within the Schomburg collection which are in French. Morris speaks French and Spanish and has a background in Latin. Plaintiffs claim that Morris is also unqualified for the position since he does not possess the statutory credential for a supervising librarian, a public librarian's certificate. Although a waiver of this requirement may be sought, Morris has admittedly not done so. In that regard, defendants argue that a public librarian's certificate is not a prerequisite for the position of head archivist to which Morris was appointed.

After service of the complaint, the various defendants moved to dismiss. Only the motion of the city and the Mayor was granted in its entirety, and the remaining defendants herein appeal from so much of Special Term's orders denying their respective motions to dismiss. However, based upon the well-established principle that courts should not generally intervene in matters involving discretionary administrative conduct (*Matter of Lorie C.,* 49 NY2d 161; *Donohue v Copiague Union Free School Dist.,* 47 NY2d 440; *Jones v Beame,* 45 NY2d 402; *Matter of Abrams v New York City Tr. Auth.,* 39 NY2d 990), the other defendants are entitled to dismissal as well. Moreover, the issue of whether a particular party or parties possesses the requisite standing to challenge specific administrative action is directly related to whether the disputed decision making is itself subject to judicial intervention. As the Court of Appeals declared in *Matter of Abrams v New York City Tr. Auth. (supra,* at p 992): "Yet it is one thing to have standing to correct clear illegality of official action and quite another to have standing in order to interpose litigating plaintiffs and the courts into the management and operation of public enterprises. Here questions of judgment, discretion, allocation of resources and priorities inappropriate for resolution in the judicial arena are lodged in a network of executive officials, administrative agencies and local legislative bodies. To allow such actions would in effect attempt displacement, or at least overview by the courts and the plain-

tiffs in litigations, of the lawful acts of appointive and elective officials charged with the management of the public enterprises."

While it is true that the concept of standing has been liberalized in recent years (see, Matter of Dental Socy. v Carey, 61 NY2d 330; Matter of Bradford Cent. School Dist. v Ambach, 56 NY2d 158), this does not mean that plaintiffs, no matter how sincerely motivated, may interpose themselves and the courts into the management and operation of public enterprises where there is no claim of unconstitutionality or other clear illegality. (See, Jones v Beame, supra.) In the instant situation, the prevailing comprehensive statutory and regulatory scheme vests broad discretion in the library system, under the auspices of the State Education Department, to administer its own affairs. Included within the discretionary power of the Commissioner of Education is the authority to oversee the functioning of the library system and to determine whether a staff member of the library must meet specified qualifications or if these requirements should be waived. (8 NYCRR 90.8 [b], [e].)

Even under the expanded definition of standing, plaintiffs herein may not challenge a personnel decision on the part of the library, which is not even a governmental entity, simply because they would have preferred that the library appoint a different individual to head the Schomburg Center. This is particularly the case in view of the fact that in order to bring suit, plaintiffs must still "be within the zone of interest to be protected by the legislation and must suffer injury from administrative action or inaction." (Matter of Dental Socy. v Carey, supra, at p 334.) In that connection, the plaintiffs in the present litigation have asserted no specific pecuniary or other loss arising out of the purported wrongful conduct. Indeed, with one exception, they do not even allege to be users of the Schomburg facility but simply express a general unhappiness with the choice of a chief archivist. Concur — Sullivan, J. P., Carro, Fein, Milonas and Ellerin, JJ.