In the Matter of UNITED METHODIST RETIREMENT COMMUNITY DEVELOPMENT CORPORATION, Respondent, v DAVID AXELROD, as Commissioner of the New York State Department of Health, Appellant.

Third Department, October 24, 1985

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Michael S. Buskus* and *William J. Kogan* of counsel), for appellant.

*Cadwalader, Wickersham & Taft (Joseph Polizzotto* and *Peter G. Bergmann* of counsel), for respondent.

## OPINION OF THE COURT

Casey, J.

Petitioner, a not-for-profit corporation, has applied for permission to construct a 240-bed residential health care facility in the community of Lake Ronkonkoma, Suffolk County. This application requires compliance with a two-part approval process (Public Health Law §§ 2801-a, 2802; 10 NYCRR part 710).

On July 17, 1975, petitioner submitted its Part I application to the Department of Health (DOH) for establishment and construction approval, setting forth the scope of the project and the public need therefor. Approval of the Public Health Council is required for a Part I application (Public Health Law §§ 220, 2801-a). DOH approved this application, but only contingently, on August 28, 1979 at a projected cost of $7,953,000. The contingencies included petitioner's obtaining an acceptable permanent mortgage within 120 days after receiving approval of DOH to start construction. Contingencies aside, however, this letter of approval authorized petitioner to submit its Part II application. The Part II application sets forth the specific design concept, including cost and architectural details of the project (Public Health Law § 2802; 10 NYCRR part 710). On April 1, 1980, DOH approved petitioner's Part II application at a projected cost of $11,482,600. Again, however, the approval was contingent upon (1) submission of acceptable design development plans within 120 days; (2) submission of final drawings and specifications; (3) approval of working drawings and specifications; (4) mortgage approval; and (5) documentation of sale of land to provide necessary equity and working capital. The first set of final working drawings submitted by petitioner in April 1981 was disapproved by DOH in October 1981. Between April 1982 and October 1982, numerous extensions of time were requested by petitioner for the resubmission of the final working drawings. In September 1983, DOH requested resubmission of the final working drawings and, on December 22, 1983, DOH threatened resubmission of petitioner's application if the drawings were not forthcoming within 30 days.

On February 15, 1984, petitioner submitted a revised Part II application, projecting an increased cost of $3,364,555 (29% over the original $11,482,600 estimate). On June 4, 1984, DOH notified petitioner that because of this increased project cost, its February submission was to be treated as a new Part I application subject to the reevaluation by the State Hospital Review and Planning Council.[*] Thereafter, in October 1984, petitioner

---

[*] The Public Health Council recommended disapproval of petitioner's project in September 1984.

commenced this CPLR article 78 proceeding to enjoin DOH from reconsideration of the Part I and Part II approvals. Special Term granted petitioner's request for relief and enjoined respondent from reevaluating petitioner's Part I and Part II applications. We reverse.

■■ Special Term erred in granting petitioner's relief in the nature of mandamus compelling respondent's approval of the project. The legal duty imposed on respondent involved the exercise of his administrative discretion. In these circumstances, mandamus was inappropriate insofar as it attempted to compel the manner of respondent's performance. Mandamus will lie only to compel the performance of a duty specifically enjoined upon respondent, not to direct respondent how to perform that duty (*see, Klostermann v Cuomo,* 61 NY2d 525, 539-540). The critical issue here is whether DOH had the authority to revoke its prior conditional approval in these circumstances, not whether DOH should have revoked it. The relief demanded by petitioner requires that the proceeding be converted to an action for an injunction under Public Health Law § 2801-c, which is appropriate to enjoin violations or threatened violations of Public Health Law article 28 (*Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88). Such a conversion is proper where a hospital seeks to enjoin DOH from reevaluating its Part I approval (*supra*).

■ Petitioner here argues that it had received approval of its Part I and Part II applications and that such approval, once given, cannot be reconsidered or withdrawn. However, final determination of approval herein had never been rendered since the approvals were always contingent and conditional. The required final working drawings were never approved and the delay in their submission must be borne at least equally by petitioner because of its request for extensions. The opinion in *Matter of Hamptons Hosp. & Med. Center v Moore (supra)* was based on the fact that there had not been final approval of the project. Even the dissent in that case did not disagree that reconsideration was permissible until final approval had been given (*supra,* p 98). The dissent was based only on its disagreement with the majority's conversion of the proceeding to one for injunctive relief under Public Health Law § 2801-c and the inappropriateness of the relief which the majority had fashioned, not with the reevaluation to be considered by DOH. In our opinion, this authority permits the determination made by DOH, which never had been finalized, to be reconsidered and

reviewed within the administrative framework where a change of original conditions over a four-year period significantly increased the cost, and the delay was at least in equal part occasioned by petitioner itself. The case of *Matter of Dobbs Ferry Hosp. Assn. v Whalen* (62 AD2d 999), upon which Special Term and petitioner rely, is factually distinguishable since the determination of public need therein was not contingent or conditioned and there were no changed circumstances to justify reconsideration.

In granting petitioner's application, Special Term relied heavily on the lack of appropriate regulations permitting reconsideration and reevaluation and respondent's attempted justification for such reevaluation on regulations subsequently enacted (*see,* 10 NYCRR 710.5 [a], [b] [2], eff Feb. 22, 1985). This court considered and rejected this argument in *Village of Herkimer v Axelrod* (88 AD2d 704, 706, *affd* 58 NY2d 1069), wherein we held that "there is no constitutional requirement that the commissioner must implement the legislation through his rule-making powers rather than through enforcement on a case-by-case basis, subject to judicial review of the propriety of his actions". Respondent was given inherent power to implement his statutory duties through the administrative process notwithstanding the absence of current or promulgated formal regulations (*see, Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588; *Matter of Montauk Improvement v Proccacino,* 41 NY2d 913).

Additionally, we find no merit in petitioner's contention that DOH is estopped from reevaluating its prior approval. Estoppel is not available against a governmental agency acting in its governmental capacity (*Matter of Daleview Nursing Home v Axelrod,* 62 NY2d 30).

Based on the foregoing, petitioner's application, converted from an article 78 proceeding to one for an injunction pursuant to Public Health Law § 2801-c, should be dismissed.

MAHONEY, P. J., KANE, MAIN and HARVEY, JJ., concur.

Judgment reversed, on the law, without costs, proceeding converted into an action for a permanent injunction and complaint dismissed.