OPINION OF THE COURT
Charles A. Kuffner, J.
The Public Administrator in the County of Richmond is appointed by the Surrogate of that county (SCPA 1102 [2]). He has the authority to take charge of the property of an intestate who leaves no eligible persons to receive letters of administration surviving. (SCPA 1112.) His powers with respect to such property are enumerated in SCPA 1123.
In the exercise of his duties, the Public Administrator is responsible for the receipt and disbursement of large sums of money and other property.
The State Attorney-General and State Comptroller are conducting a joint investigation into the management policies of the Public Administrators within New York City and outlying counties. (Wise, Agencies Probe Counsel Fees Paid via Public Administrators, NYLJ, Sept. 22, 1986, p 1, col 3.) As part of this investigation, auditors and other personnel from these agencies examined the books and records of the Richmond County Public Administrator at his offices for a two-week period. The Public Administrator cooperated in that aspect of the investigation.
In further pursuit of this investigation, the Attorney-General issued and served administrative subpoenae duces tecum upon the Richmond County Public Administrator, John D. Kearney, and his counsel, James J. Hasson, Esq. and John J. *847 Turvey, Esq. The Attorney-General seeks the Public Administrator’s testimony concerning the financial and management practices and policies of his office. For example, they intend to inquire as to why he had allegedly delayed completion of the administration of some estates; why real property has been allegedly sold privately, rather than at public auction, and why he is allegedly holding money in bank accounts bearing little or no interest. According to the Attorney-General’s memorandum, the justification and circumstances surrounding these practices must be fully explored.
When Kearney, Hasson, and Turvey refused to comply unconditionally with the subpoenae, the Attorney-General commenced this proceeding to judicially enforce them, and to compel their compliance. Petitioners, Robert Abrams, as Attorney-General of the State of New York, and Edward Regan, as Comptroller of the State of New York, also seek to disqualify Hasson and Turvey as counsel for the Public Administrator, and to exclude their presence at his examination, on the ground, inter alia, that they are also targets of this investigation.
Respondent Kearney has cross-moved to quash the subpoenae duces tecum claiming, inter alia, that it was issued without statutory authority.
Counsel for the respective parties appeared before this court for oral argument and for an offer of proof on October 9, 1986.
In view of all the proceedings in this matter until this point in time, it appears to the court that two major issues are crystallized for determination. First, should the Public Administrator’s counsel, appointed by the Surrogate, be disqualified from representing him during these administrative investigative proceedings? If not, should they at least be excluded from the Public Administrator’s presence during his oral deposition? Second, do the petitioners have sufficient authority to conduct this deposition in the first place? If so, what is the scope and breadth of the permissible inquiry?
The court will address these issues ad seriatim.
I. (A) SHOULD THE RESPONDENT’S APPOINTED COUNSEL BE DISQUALIFIED?
Code of Professional Responsibility DR 5-102 (B) provides: “If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until *848 it is apparent that his testimony is or may be prejudicial to his client.”
The courts have been attentive in recognizing the potential for abuse under this rule where one counsel seeks to disqualify opposing counsel on the grounds that he intends to call his adversary to give prejudicial testimony. They have imposed a relatively high standard of proof upon the party seeking the disqualification. In Rice v Baron (456 F Supp 1361), the court, after noting that the rule was never intended to permit lawyers to call opposing counsel as witnesses and thereby disqualify them as counsel, held that the moving party " 'bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of such prejudice occurring is substantial.’ ” (456 F Supp, at p 1371.) This rule has been similarly stated in other decisions as well (see, e.g., Freeman v Kulicke & Soffa Indus., 449 F Supp 974; Lefkowitz v Mr. Man, 111 AD2d 119; Jacobson v Van Rhyn, 98 AD2d 764 [2d Dept]; Tucker v Weissman, 89 AD2d 852 [2d Dept]).
The court must now examine the offer of proof made by petitioner on the issue of what prejudice will result to respondent if counsel were to testify.
Counsel stated, at oral argument, that there were delays in completing the administration of some estates, and that some correspondence exists from the Public Administrator to counsel asking why they hadn’t been closed.
Standing alone, this does not demonstrate clearly adverse positions between the Public Administrator and his counsel. Any responses to his inquiries may be totally consistent with his position, and any inference that they may prejudice the Public Administrator is purely speculative. In addition, Mssrs. Hasson and Turvey have been counsel to the Public Administrator only for the last two years. Thus, they would not be in a position to testify in response to inquiries about matters occurring prior thereto, and likewise could not testify as to the status of any estates over which they assumed no responsibilities. The Attorney-General has wholly failed to differentiate between the matters over which Hasson and Turvey have assumed responsibility as counsel and those assigned to their predecessor.
The court also notes at this point that the petitioners’ offer of proof emanated from the arguments of counsel, without the testimony of witnesses with knowledge of the facts, nor was there an offer of the documents referred to by counsel.
*849 Accordingly, the court is of the opinion that petitioners have failed to meet their burden of proof on this issue. Their proof is simply too vague and speculative, and they have failed to show any substantial likelihood of prejudice to respondent if counsel were to testify.
However, should it become apparent during or after the examination of Kearney, Hasson or Turvey that counsel will be put in a position of either discrediting the testimony of their client, or testifying as to certain matters which will prejudice their client’s position, then the Attorney-General shall be given leave, upon a sufficient showing, to renew and reargue this portion of their application.
I. (B) SHOULD COUNSEL BE EXCLUDED FROM THE EXAMINATION OF THE RESPONDENT?
The Attorney-General argues that it would undermine their investigation if Turvey and/or Hasson were permitted to be present at Kearney’s oral examination. Since they will also be required to testify at some future date, they may gain advance knowledge of the questions to be posed, which will prevent the spontaneous and unrehearsed responses to which the Attorney-General claims to be entitled. The Attorney-General claims that the public interest in such unimpeded investigation overrides the respondent’s right to counsel of his choice.
The Attorney-General has already agreed to permit Kearney to appear at any sworn depositions with legal representation. It is the presence of Hasson and/or Turvey he objects to.
Although there is no right to counsel at such administrative investigations (In re Groban, 352 US 330, 335; Anonymous v Baker, 360 US 287, 292; Matter of Kanterman v Attorney-General of State of N. Y., 76 Misc 2d 743), the right to exclude counsel may be waived if counsel’s presence is permitted by the examiner (Matter of Hentz & Co. v Lefkowitz, 22 AD2d 475, affd 16 NY2d 544).
In the Hentz case (supra), the Attorney-General was in the midst of an investigation of fraudulent business practices under the Martin Act (General Business Law art 23-A). Petitioner was subpoenaed to appear for examination, and upon the return date, complied and appeared with an attorney who had previously appeared with three other witnesses in the same investigation. When the Attorney-General refused to permit this attorney to be present, petitioner commenced a proceeding to enjoin the Attorney-General from proceeding unless petitioner was permitted to appear with counsel of his *850 choice. The Court of Appeals affirmed the First Department’s determination 1) that the right to counsel included the right of free choice of counsel, 2) that since petitioner was afforded the right to counsel, it could not be circumscribed by rejecting petitioner’s choice of counsel, without sufficient evidence that such counsel was impeding the investigation, and 3) that the mere fact that petitioner’s counsel appeared with three prior witnesses was not adequate proof of a violation of the confidentiality requirements under the Martin Act, nor was it proof that such counsel was impeding the investigation.
The court finds the situation at bar sufficiently similar on the facts so as to be bound by the rule enunciated in Hentz (supra). Since the Attorney-General has permitted the Public Administrator to appear with counsel, he cannot at the same time negate such permission by rejecting his choice of counsel. The mere presence of counsel at the questioning does not in and of itself impede the investigation, even if counsel will be later called as a witness. In fact, petitioner concedes that there is no showing that Mssrs. Hasson or Turvey "would deliberately distort their testimony by having previewed the examination”. Consequently, it is mere surmise that such a situation "undermines the integrity of the investigation”.
An individual’s right to select an attorney who he believes is best capable of providing adequate representation has freedom of association implications founded in the 1st Amendment (N.A.A.C.P. v Button, 371 US 415, 428-438; Matter of Abrams [John Anonymous], 62 NY2d 183, 196-197). This right will not yield unless there is some overriding public interest in the fair administration of justice. (Matter of Kelly, 23 NY2d 368, 378, n 3; Matter of A. & B., 44 NJ 331, 209 A2d 101; Nichols v Village Voice, 99 Misc 2d 822, 825.)
The court assumes that the ultimate goal of this investigation is the truth, and not spontaneity of response. There is no showing here that the ability to tell the truth is affected by the possible knowledge of the questions in advance. The Attorney-General’s proposition that the public has overriding interest in ensuring a swift and effective investigation of certain activity which must prevail over the rights of persons to be represented by counsel who may give advice which might hamper the investigation simply has no merit. (Matter of Abrams [John Anonymous], supra, pp 196-198.)
The Attorney-General’s other stated goal, that of secrecy, has been eliminated because he has already allowed counsel *851 some participation in this investigation. (See, State of New York v Biggane, 48 Misc 2d 33, 37.)
II. (A) petitioner’s authority to depose respondent.
Initially, the petitioners relied on Executive Law § 63 (8), which provides in pertinent part: "8. Whenever in his judgment the public interest requires it, the attorney-general may, with the approval of the governor, and when directed by the governor, shall, inquire into matters concerning the public peace, public safety and public justice. For such purpose he may, in his discretion, and without civil service examination, appoint and employ, and at pleasure remove, such deputies, officers and other persons as he deems necessary, determine their duties and, with the approval of the governor, fix their compensation * * * The attorney-general, his deputy, or other officer, designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require that any books, records, documents or papers relevant or material to the inquiry be turned over to him for inspection, examination or audit, pursuant to the civil practice law and rules”.
Thus, it is clear from a plain reading of this statute that the Attorney-General has no authority to conduct any inquiry, including the investigation at issue here, without the prior approval of the Governor. It is undisputed that no such approval of the Governor to inquire into the offices of the Public Administrators has been obtained. The logical conclusion is that the subpoenae issued in the name of the Attorney-General pursuant to Executive Law § 63 (8) also lack statutory authority.
The Attorney-General and the Comptroller have cooperated in this investigation. They have gone so far as to cross-designate staff members as agents of the other. They are sharing each other’s personnel, expertise, and resources in the conduct of the investigation. This concerted effort, however, is not a substitute for the approval of the Governor. The Comptroller cannot bootstrap the power and authority of the Attorney-General to conduct an investigation by designating the latter’s deputies as his own. A fortiori he cannot append any of the Attorney-General’s authority on to his own if such authority does not exist in the first place.
Consequently, the court is of the opinion that no authority exists to issue the subpoenae under Executive Law § 63. As a result, the Attorney-General is not a proper party to this *852 proceeding and his name shall be removed from the caption of this action.
This is not to say that no authority whatsoever exists for the issuance of a subpoena by the Comptroller. State Finance Law § 8 (11) gives the Comptroller the duty to "[supervise the administration of all the funds paid into any court of record or ordered to be so paid by a judgment, order or decree of any such court of record, and/or paid to the public administrator of any county and/or to the county treasurer of any county to whom letters of administration have been or shall be granted, or to any other administrator having the custody of funds payable to the state comptroller pursuant to the provisions of section two-thousand two-hundred twenty-two of the Surrogate’s Court Procedure Act” (emphasis added).
In furtherance of these supervisory duties, the Comptroller has been given subpoena power to require the attendance of any person for examination as to "any matter within the scope of the inquiry or investigation being conducted by the comptroller” (State Finance Law § 9).
Additionally, General Municipal Law §§ 33 and 34 give the Comptroller the power to examine into the financial affairs of every municipal corporation, district agency, and activity, and to issue subpoenae to compel attendance for the purposes of examination and investigation.
As a result of his supervisory and investigatory powers under the State Finance Law, the Comptroller must make a report of his findings to the Legislature (State Finance Law § 8 [9]), and he may make, amend or repeal the rules or regulations of his agency as he may deem necessary (State Finance Law § 14).
This statutory language is broad enough in scope to confer authority upon the Comptroller to conduct the investigation presently in progress, and compel the attendance of the respondent Public Administrator and his counsel and to inquire of them as to any matters within the scope of his general supervisory powers. The Attorney-General and his staff may conduct the investigation on behalf of the Comptroller, since he is, in effect, the State’s attorney (Executive Law § 60) but his authority to do so is defined by the State Finance Law and the General Municipal Law, and not the Executive Law.
II. (B) WHAT IS THE PERMISSIBLE BREADTH AND SCOPE OF THIS INQUIRY?
If a public officer, such as the Comptroller, has the statutory *853 power to issue subpoenae in the conduct of an investigation, the courts should not interfere in the decision to exercise that power. (Matter of Hirshfield v Craig, 239 NY 98, 110.) These nonjudicial subpoenae must bear only a "reasonable relation to the subject-matter under investigation and to the public purpose to be achieved” (Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, 231; Matter of Windsor Park Nursing Home v Hynes, 42 NY2d 243). The court cannot say that the subpoenae served in this matter bear no reasonable relationship to the audits which the Comptroller is entitled to conduct.
This is not to say, however, that the right to inquire into the financial affairs of respondent knows no bounds. Petitioner strongly urges the court to consider that the only authority granted to the Comptroller is to conduct a "financial audit”, that is, to investigate whether books, records, and accounts are accurate, whether they reflect a true and accurate picture of the financial condition of the accounts in respondent’s hands, whether any money is unaccounted for, and the like. Petitioner concludes that this type of audit prohibits the Comptroller from inquiring into other areas in which he has publicly announced an intention to delve. For example, the Attorney-General would like to examine the Public Administrator as to why estates have been kept open for extended periods of time, why accountings haven’t been prepared for these estates, why real estate under the control of the respondent was sold privately rather than at public auction, why the respondent held certain sums of money in bank accounts paying little or no interest, etc. Respondent seeks to limit the scope of the examination to strictly financial aspects of his office.
On this point, the court reads the authority given to the Comptroller under section 8 (11) to be much broader than respondent’s interpretation. He has the power to "supervise” the administration of the funds held by the Public Administrator, and not merely to audit his books and records.
In Matter of Ronan v Levitt (73 Misc 2d 35), certain officers of the New York City Transit Authority made similar arguments in an attempt to quash subpoenae duces tecum served by the Comptroller. The authority in the Ronan case for the Comptroller’s audit was Public Authorities Law § 2503 which gave him the right to examine the books and accounts of the Transit Authority, including its books, receipts, disbursements, contracts, and other matters relating to its financial *854 standing. The court held that this language did not "attempt to tell the Comptroller how to conduct such audit”, nor did it "draw such semantic distinction between 'management operational audits’ and 'financial audits’, as the petitioner[s] [Transit Authority] urge[s].” (73 Misc 2d, at p 38.)
The authoritative language in the matter at bar appears even broader than the statute at issue in the Ronan case (supra). It thus follows that the Comptroller here has at least as much authority to conduct a management operational audit which examines the management, operations, and policies of respondent’s office, as well as the strictly financial aspects thereof. This court finds the reasoning set forth in Ronan well taken and adopts it as it applies to the matter at bar.
Also, it would be beyond the discretion of this court to interfere in the manner in which the Comptroller, in his judgment and discretion, chooses to supervise the administration of these funds unless there is clearly no rational basis therefor. (See generally, Matter of Pell v Board of Educ., 34 NY2d 222; Rodgers v Koch, 111 AD2d 727, affd 67 NY2d 821; Peconic Bay Broadcasting Corp. v Board of Appeals, Town of Southhampton, 99 AD2d 773 [2d Dept]; Matter of Procaccino v Stewart, 32 AD2d 486, affd 25 NY2d 301.)
The problem in this matter at this juncture of the proceeding is that the court cannot know whether any line of questioning is within the Comptroller’s authority to ask until it is asked. Any determination in advance of the testimony is not permitted (Fahy v Commission to Investigate Allegations of Police Corruption & City’s Anticorruption Procedures, 65 Misc 2d 781; Matter of Ronan v Levitt, supra, p 38).
Therefore, the court directs the depositions of respondent to go forward in accordance with the guidelines set forth herein. The court will be available for rulings as to the propriety of any particular question or questions. Counsel are reminded to keep the line of inquiry, and any objections thereto, in conformance with this memorandum.
The petition to compel compliance with the subpoenae duces tecum, and to exclude counsel from the deposition, and the cross motion to quash the subpoenae and to permit counsel’s presence, are granted in part and denied in part in accordance herewith.