OPINION OF THE COURT
Peter P. Cusick, J.
Petitioner John Pedalino moves by order to show cause for an order restraining and enjoining respondents Rudolph Giuliani, Howard Safir, Patsy Maggio and the City of New York from continuing to implement the "pilot program” reducing minimum staffing levels for fire alarm dispatchers at all New York City Borough Fire Headquarters.
Petitioner, a Fire Alarm Dispatcher (FAD), is moving for the within relief asserting as a basis the Equal Protection Clause of the New York State Constitution. He claims that Richmond County suffers the longest "response time” of any of the boroughs of New York City, even under the previous guidelines of the Fire Department, which required a minimum of one Supervising Fire Alarm Dispatcher and four FADs for each tour of duty. On January 5, 1995, a "pilot program” of no set duration was instituted which imposed a new staffing minimum of three FADs for a tour of duty to run from 9:00 p.m. to 9:00 a.m. seven days a week. According to petitioner, the "pilot program” will have a "devastating effect on the people of Richmond County, already suffering the longest response times in the City”, and that consequently, the residents of Richmond County are being denied their rights to equal protection by an agency or subdivision of the State under article I (§ 11) of the NY Constitution.
In opposition to the motion, respondents claim that while Staten Island has the longest over-all response time, this is not caused by the Staten Island dispatchers’ processing time, but by the longer period of time it takes the fire units on Staten Island to get to the scene of a fire. They further claim that Michael R. Tenga, a Principal Quantitative Analyst for the Fire Department, conducted a study analyzing the effect a change in tour times and dispatcher manning would have on dispatcher’s ability to respond to fire alarms. The studies concluded that if manning levels were increased during the day and reduced at night and tour times changed as the pilot program details, then thousands of dollars would be saved in overtime, and dispatching would operate more efficiently dur *326 ing peak hours of fire alarm activity. They state that given the low level of fire alarm activity at night, three FADs can effectively handle all alarms received.
Petitioner’s motion for a restraining order pending the outcome of this action must be denied. Petitioner has failed to demonstrate that the pilot program denies the people of Richmond County equal protection under the Constitution. The constitutional guarantee of equal protection provides that no person shall be denied the equal protection of the law of this State or any subdivision thereof (see, NY Const, art I, § 11). It has long been held that there is no denial of equal protection of the laws if the differentiation made rests on some rational consideration and is not palpably arbitrary. (See, Gleason v Gleason, 26 NY2d 28.) Additionally, the challenged statute or rule must invidiously deny one class of individuals a substantial benefit available to another class. (See, People v Kennedy, 128 Misc 2d 937; People v McMillen, 80 AD2d 966.) It is also well established that where there is neither a suspect classification nor an infringement of a fundamental right, a classification will be sustained as long as there is a rational relationship between the classes established and a legitimate governmental interest which is sought to be achieved. (See, Matter of Campagnola v McGuire, 88 AD2d 577.) At bar the entire citizenship of Staten Island is not one which is traditionally deemed to be a suspect class, i.e., based on race, alienage or nationality. (See, Matter of Joseph LL., 97 AD2d 263.) Nor has it been held that citizens have a constitutional right to fire protection. (See, Helman v County of Warren, 67 NY2d 799.) Applying the above standards to the instant case, it is clear that respondents’ decision to implement the pilot program must be upheld as rationally related to a legitimate government purpose and interest. It is beyond cavil that the health and safety of the citizenry represents a legitimate government purpose. As such, sound cost effective fire protection principles as put forth by the pilot program are neither discriminatory nor irrational and clearly further a governmental interest.
In order to obtain the drastic remedy of a preliminary injunction, it is well settled that the movant must establish (1) the likelihood of ultimate success on the merits, (2) that he will suffer irreparable injury if the relief is not granted, and (3) equity favors the granting of the injunction (see, CPLR 6301; Faberge Intl. v Di Pino, 109 AD2d 235; Eljay Jrs. v Rahda Exports, 99 AD2d 408).
*327 In the present matter, petitioner has not demonstrated irreparable harm. Petitioner himself concedes that no one knows whether a reduced staff will allow for effective dispatching. Thus, petitioner’s averments that harm will befall the citizens of Richmond County if the pilot program is continued are too speculative, and do not rise to the level of irreparable injury sufficient to justify injunctive relief (see, Association of Am. Med. Colls. v Carey, 482 F Supp 1358).
Furthermore, petitioner has failed to show how the equities require enjoining the pilot program. It appears from all of the objective data compiled by respondents that their determination to implement and continue the program was made taking into account petitioner’s area of concern. It is clear from all of the studies and reports annexed to the opposition papers that the Fire Department took a "hard look” at the possible obstacles facing the program and made a "reasoned elaboration” of the basis for its determinations (see, e.g., Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417). Thus the respondents’ decision with regard to the within "pilot program” was neither arbitrary nor capricious. Petitioner has neither advanced any specific data to warrant cancelling the program, nor controverted the positive results presented by the Fire Department which resulted from a two-week simulation of the pilot program prior to its implementation. Thus, the equities in this situation are balanced in favor of the Fire Department.
Finally, petitioner has not demonstrated a likelihood of success on the merits and has failed to establish a clear legal right to the ultimate relief requested. Pursuant to section 487 of the New York City Charter, the Fire Commissioner is vested with the "sole and exclusive power” with respect to the "government, discipline, management, maintenance and direction of the Fire Department and the premises and property thereof’. Thus, the issues under consideration at bar are ones that the court is likely not to consider given the fact that there is no evidence to doubt the good faith of the Fire Department (see, Grant v Cuomo, 130 AD2d 154; Rodgers v Koch, 111 AD2d 727). The remedy sought herein, to mandate certain staffing levels of FADs, does not lie because the responsibility of the New York City Fire Department involves the exercise of discretion by its Commissioner, under the New York City Charter, and not the performance of an act required by law (Matter of Kupersmith v Public Health Council, 101 AD2d 918, affd 63 NY2d 904; see also, Matter of United *328 Methodist Retirement Community Dev. Corp. v Axelrod, 110 AD2d 292).
Accordingly, the application for a preliminary injunction is denied, and this petition, in the nature of a CPLR article 78 proceeding, is hereby dismissed.