OPINION OF THE COURT
Jasen, J.
We hold that the Public Health Council had power to re-evaluate an initial determination of public need for establishment of a hospital where its initial determination had not received final approval and that the Public Health Council was not estopped from re-evaluating that determination of public need.
In 1972, the Public Health Council passed a resolution whereby it proposed to approve petitioner’s application to establish a 220-bed hospital in Suffolk County subject to certain financing conditions. For the following four years, petitioner encountered difficulty in securing proper financing in' compliance with the conditions set forth in the initial determination of public need. Meanwhile, in the summer of 1976, the Bureau of Facility and Service Review of the Department of Health began a review of the public need for all pending hospital projects, including petitioner’s, using a substantially different methodology than had been employed in 1972 when the inital determination of public need was made. A preliminary staff report finding no need for petitioner’s project was submitted to the Public Health Council on December 16, 1976. Subsequently, the petitioner was invited to and did attend a meeting with a subcommittee of the New York State Hospital Review and Planning Council relative to the public need for the proposed hospital. On February 3, 1977, the subcommittee, concluding that the construction of the facility would result in a surplus of hospital beds in the area, recommended the disapproval of petitioner’s application because there was no public need for the project.
*92 The Public Health Council, on April 22, 1977, adopted a resolution that it was “considering disapproving” petitioner’s application for establishment and informed petitioner that its disapproval would become final unless a hearing was requested within 20 days. A scheduled public hearing was held in abeyance after petitioner commenced a CPLR article 78 proceeding seeking judgment enjoining respondents from reconsidering the question of public need.
Special Term dismissed the petition, holding that the Public Health Council had the power to reconsider its initial determination of public need. The court noted that the council’s initial determination was at best “provisional or interlocutory” and was, therefore, subject to further review, including the application of a newer methodology to the question of public need. The court also held that inasmuch as the provisional nature of the determination was at all times apparent to petitioner, no estoppel could be based upon the council’s exercise of its power to reconsider.
The Appellate Division, Second Department, converted the proceeding into an action for an injunction pursuant to section 2801-c of the Public Health Law, concluding that such an action was the proper procedural vehicle by which to test the Public Health Council’s power to reconsider its prior determination. On the merits, the court agreed with Special Term that the council had power to reconsider, but went on to hold that the council should be estopped from undertaking such a reconsideration in the instant case. The court then issued a permanent injunction prohibiting the council from re-evaluating public need.
On this appeal, petitioner argues that it was entitled to the injunction by reason of the actions taken by respondents concerning the applications for establishment and construction approval and petitioner’s expenditures in conjunction therewith in reliance thereon. For all of these reasons, petitioner urges, the Public Health Council is equitably estopped from reconsidering the question of public need.
The respondents, on the other hand, assert that the 1972 resolution of the Public Health Council was conditioned on petitioner’s obtaining proper financing and that, prior to such compliance and final approval, the application for es *93 tablishment could be reconsidered to determine whether there was public need at the time of final submission for approval.
We agree with the courts below that the Public Health Council had the power to reconsider its initial determination of public need made pursuant to subdivision 3 of section 2801-a of the Public Health Law. The tentative nature of this administrative determination clearly rendered it subject to reconsideration by the agency. (See Matter of Siegel v Mangan, 258 App Div 448, affd 283 NY 557.) The 1972 resolution, on its face, states that it is merely a proposal to approve. Such a proposal does not constitute an immutable determination that there is a public need for the hospital. Indeed, where, as here, considerable time had elapsed since the initial determination was made, a reevaluation of public need would be in order to determine whether there remained public need for such a facility at the time final approval is sought. It must be remembered that the Public Health Council is powerless to approve the establishment of a hospital unless the agency is convinced that there is a public need therefor. (Public Health Law, § 2801-a, subd 3.) Hence, it would seem that reconsideration of its initial determination is consistent with the proper exercise of the council’s statutory duty only to authorize construction of necessary facilities. (Cf. Matter of Venes v Community School Bd. of Dist. 26, 43 NY2d 520, 524-525.)
We cannot agree, however, with the Appellate Division, that the desired injunction should issue because the Public Health Council, in consequence of its earlier actions, is now estopped to re-evaluate the question of public need. The doctrine of estoppel is not applicable to the State acting in a governmental capacity. (See 21 NY Jur, Estoppel, § 76, p 110.)[1] The Public Health Council, acting on behalf of the *94 State and the citizenry of the communities affected, is charged with responsibility to determine “the public need for the existence of the institution at the time and place and under the circumstances proposed”. (Public Health Law, § 2801-a, subd 3.) In principle it would be unthinkable that the council through mistake or otherwise could be estopped from discharging the responsibility vested in it by legislative enactment.
In practice one could scarcely think of an area of governmental regulation more inappropriate for shackling the freedom of exercise of governmental oversight. In 1976 our Legislature declared a state of emergency in order to assure the availability of funds for medical services because it found that State and local governments were facing emergency fiscal crises. (L 1976, ch 76, § 1.) In 1977, hospital costs accounted for 6.4 billion dollars in public expenditures (State Health Plan, New York State Health Planning Commission, June, 1979, pp 85-86). It requires no documentation to demonstrate the catastrophic economic consequences both to consumers and to providers of health care which might attend the construction of unneeded health care facilities. Runaway health care costs have been the preoccupation of both State and Federal government in recent years, and the extent and character of hospital construction have been recognized as a major component of the economic complex. Whether a new hospital shall be constructed, important as is the issuance of the necessary governmental approval to the proponents and supporters of the proposed hospital, is not an issue involving only the State regulatory agency and the applicants for approval. The economic burden of hospital construction in excess of public need extends through a large economic shed and for a protracted period of time.
When the final disposition of the application for approval is made that disposition and the methodologies of the underlying determination of public need will, of course, be subject to the limited judicial examination which can be obtained in *95 a proceeding under CPLR article 78. But the freedom to make such a final determination cannot be permitted to be constrained by prior, nonfinal, conditional determinations or other actions of the State agencies on any theory of equitable estoppel. (Cf. Matter of Gavigan v McCoy, 37 NY2d 548, 552.)
To the plaint these applicants assert that they have been “misled on” by prior actions of the council and the Department of Health, it suffices to make two observations. In the first place, the applicants and their counsel knew that there had been no approval for establishment and that approvals given in connection with construction were conditional only. It would be naivé to suppose that the knowledge of these applicants and their experienced counsel did not include an awareness at least of the probable inapplicability of any doctrine of estoppel. In the second place, to penalize the State agencies because their representatives undertook to provide co-operation and active assistance to the applicants (as contrasted, for instance, with their withholding such assistance and discouraging the expenditure of signficant efforts or funds until the grant of final approval) would be unfortunately to chill and dampen the efforts of government servants to assist private citizens in the presentation and processing of applications, for required governmental approval.
Having determined that the Public Health Council had authority and responsibility to reconsider its initial tentative finding of public need, and that it was not estopped to do so, we conclude that petitioner is not entitled to an injunction preventing the council from exercising its authority and discharging its responsibility pursuant to law.
We note also that we differ with the proposition advanced by the dissent that it was error as a matter of law on the part of the Appellate Division to have converted this proceeding from one under CPLR article 78 to a proceeding for an injunction under section 2801-c of the Public Health Law. The relief sought by petitioner is an injunction against reconsideration by the Public Health Council of its prior determination of public need for petitioner’s establishment and an order directing the council to make a prompt deter *96 mination approving petitioner’s application for establishment. Because there had been no final determination by the council with respect to that application, an article 78 proceeding by way of certiorari or of mandamus to review does not lie. The absence of such a final determination, a prerequisite for relief in those categories, would not of itself, however, necessarily require dismissal of the article 78 proceeding; finality of action on the part of the administrative agency is not the prerequisite to all proceedings under article 78.
An article 78 proceeding may lie in the absence of a final determination where the relief sought is by way of prohibition[2] or by way of mandamus to compel performance by an administrative agency of a duty enjoined by law. Mandamus for such purpose, however, lies only where the right to relief is “clear” and the duty sought to be enjoined is performance of an act commanded to be performed by law and involving no exercise of discretion. (Weinstein-Korn-Miller, CPLR Manual [rev ed], par 32.02, subd [b].) The unavailability of an article 78 proceeding in the present instance inheres in the character of the action petitioner seeks to compel — proscription of any reconsideration of the determination of public need for petitioner’s establishment, made conditionally by the council in connection with petitioner’s application for prior approval of construction by the Commissioner of Health pursuant to subdivision 2 of section 2802 of the Public Health Law, and approval, on the basis of that prior determination, of petitioner’s application for establishment. The relief sought — in essence authorization for additional hospital facilities — involves the exercise of the ultimate judgmental responsibility vested by the Legislature in the Public Health Council.[3] The inately dis *97 cretionary character of this determination is not altered by petitioner’s vigorous assertion that, because of its actions in the past, the council is now constrained to reach but one ultimate conclusion — approval of the application — or by any verbal characterization of the proceeding as one “in the nature of mandamus to compel a nondiscretionary administrative act”. The Appellate Division, concluding that the hospital was entitled to the relief sought on the merits, recognized the procedural problem because of the unavailability of article 78 relief and properly converted the action under CPLR 103 (subd [c]). We entertain the proceeding as converted but reach the opposite conclusion on the merits. The availability under article 78 of mandamus to compel performance of a duty by an administrative agency depends not on the applicant’s substantive entitlement to prevail, but on the nature of the duty sought to be commanded — i.e., mandatory, nondiscretionary action.
Nor is it internally inconsistent, as the dissent suggests, to find that the controversy before us is “ripe” even though it may not be reviewed pursuant to CPLR article 78. The “ripeness” of a controversy does not turn solely upon the question of which procedural vehicle is appropriate to bring the controversy before the court. Hence, it is not at all inconsistent to state on the one hand that we agree with the dissent that the question in this case is “ripe” in the sense that it is appropriate for judicial examination at this time, but to hold, on the other, that the question should be examined through the procedural vehicle embodied in section 2801-c of the Public Health Law which empowers a court to enjoin “threatened violations” of the Public Health Law.
Nothing in the language of section 2801-c of the Public Health Law forecloses recourse to its provisions to enjoin asserted violations or threatened violations by the Public Health Council or the Department of Health of provisions of article 28 of the Public Health Law. Indeed, the availability of such a judicial remedy pending the issuance of a *98 final determination by the public agencies may be a very useful procedural vehicle for applicants such as petitioner.
Accordingly, the order of the Appellate Division should be modified to the extent of denying the relief sought in the converted application for an injunction pursuant to section 2801-c of the Public Health Law, and, as so modified, affirmed.

. Reliance placed at the Appellate Division and by petitioner on our decision in Bender v New York City Health & Hosps. Corp. (38 NY2d 662) is misplaced. In that case we held that, subject to the development of additional evidentiary facts, the doctrine of equitable estoppel might be invoked to permit the filing of notices of claim nunc pro tune under section 50-e of the General Municipal Law during a period of particular confusion incident to the transfer of operational control of municipal hospitals from the city to the Health and Hospitals Corporation. That holding, addressed to an unusual factual situation, *94 is of very limited application and should not be read as diminishing the vitality of the general rule that the doctrine of estoppel is not applicable to agencies of the State acting in a governmental capacity.

. No one asserts that the present proceeding was one in the nature of prohibition; there is no contention that the Public Health Council intends or threatens to act in excess of its jurisdiction.

. Matter of Utica Cheese v Barber (49 NY2d 1028), cited by the dissent, is inapposite. That was a proceeding to compel the State agency to act on an application for the issuance of a milk dealer’s license. The applicant there did not, as does the applicant here, seek a judicial direction that the administrative agency act in. a particular manner substantively favorable to the applicant. What was complained of in Utica Cheese was failure to take any action on a *97 license application, and the relief sought was the performance of a nondiscretionary duty enjoined by law, namely, some action on the license application— one way or the other.