WELLAND ESTATES, INC., Respondent, v CHARLES SMITH, as Commissioner of the Department of Buildings of the City of New York, et al., Appellants.

First Department, July 2, 1985

## APPEARANCES OF COUNSEL

*Gerald M. Levine* of counsel (*Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey,* attorneys), for respondent.

*Fay Leoussis* of counsel (*Leonard Koerner* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

## OPINION OF THE COURT

ROSENBERGER, J.

Petitioner, Welland Estates, Inc., was the owner of a single-room occupancy (SRO) building located at 222 Riverside Drive in Manhattan. Between 1982 and 1984 the building had one elderly tenant, who died in January 1984. After an inspection

revealed that the building was structurally unsound and dangerous, respondent Borough Superintendent served petitioner and the mortgagee with an unsafe building notice on February 9, 1984. The unsafe building notice directed Welland Estates to choose immediately one of three optional remedies: demolish, seal off, or upgrade the building to correct the condition.

Local Laws, 1983, No. 19 of the City of New York requires certification of no tenant harassment by the Department of Housing Preservation and Development (HPD), prior to the demolition of an SRO. (Administrative Code of City of New York § C26-118.8.) As the owner of a multiple dwelling, petitioner was obligated to remedy the unsafe condition. (Administrative Code § C26-80.0.) It determined to demolish the building, and hired a contractor, Artko Wrecking Company (Artko), who filed the necessary application for a permit. (Administrative Code §§ C26-20.0, C26-109.1, C26-109.2 [d].) Since all demolitions are subject to the provisions of Local Law No. 19, Artko completed an "SRO Intake Form". On the SRO Intake Form, Artko falsely denied that petitioner's building was an SRO. Artko also falsely answered the question, "Is this a demolition permit application for a demolition that *was not* ordered by the Department of Housing Preservation and Development?", "No." (Emphasis in original.)

Respondents issued a demolition permit in reliance upon the misrepresentation that the building was not an SRO. On May 10, 1984, they revoked the demolition permit and issued a stop work order, upon discovering that petitioner's building was indeed an SRO and lacked the prerequisite certificate of no tenant harassment, or a waiver thereof, from HPD. Approximately 50% of the building had been demolished.

Petitioner commenced this proceeding by order to show cause seeking to vacate the stop work order and to reinstate the demolition permit. Petitioner contended, *inter alia,* that (1) the misrepresentations on the application were inadvertent, specifically that the erroneous answer to question number 3 was due to its misleading negative phraseology and confusion of HPD with the Housing and Development Administration, the title which respondent Department of Buildings had used in the unsafe building notice; (2) compliance with Local Law No. 19 was not required because the building had been declared unsafe; and (3) Local Law No. 19 applies only to circumstances where a demolition was "voluntarily" sought, not required.

Respondents' cross motion to dismiss for failure to state a cause of action was denied by Special Term (Tyler, J.), and they

were directed to answer the petition. Respondents' answer asserted that (1) the unsafe building notice did not obviate the necessity for petitioner to comply with Local Law No. 19, since it did not require demolition as an exclusive remedy, but gave petitioner the option to seal off or upgrade the building and (2) Local Law No. 19's requirement of an HPD "no tenant harassment" certificate is mandatory under all circumstances, including those where owner neglect may have caused a building to become unsafe for occupancy and functionally unsalvageable. Respondents acknowledged that it would be impractical not to allow demolition to be completed. They counterclaimed for a judgment directing petitioner to complete the demolition, apply for a new permit utilizing the procedures set forth in Local Law No. 19, and enjoining further development until a certificate of no tenant harassment is granted, or until three years after the denial of such a certificate.

The matter was restored to the Special Term Calendar. By judgment entered July 30, 1984, the court (Grossman, J.), granted the petition, and held that an owner is relieved of compliance with Local Law No. 19 where he is being compelled to act because a building had been declared unsafe. The court determined that the literal application of the statute under these circumstances could have the illogical and "irresponsible" consequence of preventing an owner unable to obtain a certificate from demolishing an unsafe building for three years.

Local Law No. 19 requires an applicant seeking a permit to demolish an SRO to obtain a certificate of no tenant harassment concerning the three-year period prior to the date of the application for a certificate, or a waiver of such certificate, from the Commissioner of Housing Preservation and Development. The law further provides for a three-year moratorium on development by any owner whose request for a certificate or waiver thereof, has been denied.

The purpose underlying Local Law No. 19, as declared by the City Council, is twofold. It is not only to encourage the preservation of SROs but also to protect SRO occupants from harassment by landlords who may desire to empty and convert them to more profitable uses. The Council expressly stated Local Law No. 19 was intended to prohibit "the owners of such building from profiting from their unlawful acts and practices by denying such owners the building permits necessary to demolish or to convert these buildings to more profitable uses where such owners have engaged in harassment."

Special Term improperly ignored the words of Local Law No. 19, clear on its face, and substituted a construction which contravenes its plain meaning, purpose and effect. The law is clear and unequivocal in its proscription of all demolition of SROs unless HPD has certified no tenant harassment, or waived certification. The interpretation adopted by Special Term manifestly contravenes the plainly intended tenant protection. It would encourage owners to permit their buildings to deteriorate, and create abhorrent living conditions, in hopes of thereby obtaining an unsafe building notice. Tenant harassment by neglect would thus have the intolerable result of freeing offending property owners from the need to seek certification of no tenant harassment.

Special Term erroneously concluded that literal application of the statute led to an illogical and absurd result, based upon the false premise that demolition was compulsory under these circumstances. The unsafe building notice left petitioner the options of sealing, upgrading or demolishing the premises. These first two options were available in the event that HPD had denied petitioner's application for a certificate. Petitioner's contention that respondents should be estopped from revoking the demolition permit is unavailing. Where, as here, a permit has been issued on the basis of material misrepresentation, departure from the general rule that estoppel does not lie against a government agency is unwarranted (*Matter of Albert v Board of Stds. & Appeals,* 89 AD2d 960, 962 [2d Dept, 1982]; *Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88).

The loophole created by Special Term patently ignored the possibility that petitioner did harass tenants in its building. In order to enforce the express policy articulated in Local Law No. 19, even though the SRO building at issue has been totally demolished, Welland Estates should be required to comply with the certification procedures and enjoined from developing the property absent such compliance, for three years. This serves the salutary purpose of deterring tenant harassment by precluding any potential profit therefrom. If, as petitioner asserts, no tenants were harassed, then a certificate will be issued. If Welland Estates is found to have harassed tenants, then it was not entitled to its demolition permit and in any event would have been precluded from developing the site for three years. Therefore, respondents' counterclaim should be granted; petitioner should be directed to apply for a new permit in accordance with the procedures set forth in Local Law No. 19; and should be enjoined from further development of the subject property until

it has obtained an HPD certificate of no tenant harassment, or until three years after the denial of such a certificate.

Accordingly, the judgment, Supreme Court, New York County (Louis Grossman, J.), entered October 3, 1984, which granted the petition for annulment of a determination of the respondent Commissioner of the Department of Buildings of the City of New York, and dismissed the counterclaim should be unanimously reversed, on the law, and the counterclaim granted, without costs.

SANDLER, J. P., SULLIVAN and CARRO, JJ., concur.

Judgment, Supreme Court, New York County, entered on October 3, 1984, unanimously reversed, on the law, and the counterclaim is granted, without costs and without disbursements.