OPINION OF THE COURT
Peter C. Patsalos, J.
Was petitioner insurance broker’s application to increase his allotment of temporary identification cards from 150 to 200 properly denied under the New York Automobile Insur *580 anee Plan? This is the rather unusual issue raised by the CPLR article 78 proceeding now before the court.
The salient facts are not in dispute. The New York Automobile Insurance Plan is a quasi-State agency, having as its sole obligation the assignment of motor vehicle insurance coverage to applicants "who are in good faith entitled to but are unable to procure it through ordinary methods” (see, Insurance Law § 5301; Smith, New York Automobile Assigned Risk Plan, appearing in 4 Examination of Insurance Companies, published by NY State Ins Dept [1954]). The Plan is authorized to print numbered temporary identification cards and issue them to brokers, referred to as "producers”, who, in turn, are entitled to issue them to applicants pursuant to the rules of the Plan (see, 15 NYCRR 32.13 [a] [2]; Aetna Cas. & Sur. Co. v Providence Washington Ins. Co., 55 AD2d 924). There is no dispute that "as a broker obtains experience and learns how to use the cards, each license broker is entitled to receive a maximum of 200 per order”. Nor is it disputed that "if a broker desires to have more than one license, that broker can apply to the Insurance Department for an additional license under another name and if approved by the Insurance Department, can receive a maximum of 200 cards with each order for each new licensee”.
In November 1988, petitioner broker sought to increase his order limit of identification cards from 150 to 200 cards. After his request was denied, petitioner instituted the instant proceeding, contending that this denial was "arbitrary and capricious”. In answering, the manager of the Plan denies petitioner’s allegations and also contends that petitioner has not "[e]xhaust[ed] Administrative [r]emedies” and has "[n]o [statutory [r]ight of [a]ppeal”.
As an initial matter, the court must reject respondent’s arguments based on procedural grounds. The silence of Insurance Law § 5301 et seq. (and rules pursuant thereto) as to a producer’s right of appeal does not necessarily preclude an article 78 proceeding. This uniform mechanism for challenging administrative determinations in court will lie provided, of course, that the determination (with certain exceptions not applicable here) is a final one (see, CPLR 7801; Matter of Hamptons Hosp. & Med. Center v Moore, 52 NY2d 88, 96). In the latter regard, respondent concedes the statute and rules thereunder provide producers no right of appeal (see, Insurance Law § 5304). Furthermore, its suggestion that petitioner has failed "to direct an amendment of the Plan rule[s]” *581 (emphasis supplied) misses the point. Petitioner claims that he is entitled to 200 cards under the existing Plan rules and procedures which, however, have been improperly applied (see, Matter of Stutzman v Fahey, 62 AD2d 1070).
Turning to the merits, it is well-settled law that in reviewing a decision of an administrative body the limited question before the court is whether that decision was illegal, arbitrary or an abuse of discretion (see, CPLR 7803 [3]; Matter of Fuhst v Foley, 45 NY2d 441). It is not, of course, the function of a reviewing court to substitute its judgment for that of an administrative body to whose expertise a subject matter has been entrusted (see, Matter of Pell v Board of Educ., 34 NY2d 222; Matter of Furey v County of Suffolk, 105 AD2d 41). The limited review function of a court does not mean, however, that the court confirms a decision simply because it has been made by an administrative body. On the contrary, the court has a genuine judicial function to exercise in determining whether an administrative decision has a rational basis in fact (see, Matter of Fuhst v Foley, supra; Matter of Furey v County of Suffolk, supra).
In an attempt to justify its denial of petitioner’s application, respondent draws the court’s attention to section 11 of its Rules which provides that "the Plan reserves the right, subject to procedures established by the [Governing] Committee, to limit the number of cards which a producer may purchase from the Plan”. Respondent goes on to enunciate certain "criteria laid down by the Plan” that an applicant, such as petitioner, must allegedly satisfy. These criteria include:
1) Determine producer’s 12-month average of applications submitted.
2) Multiply the 12-month average by 2. If this figure exceeds 200, the producer may purchase that number of cards.
3) Management may permit the producer to purchase a number of cards which exceeds the figure determined in step 2. Items to be considered include frequency of ordering ID cards, trend of producer’s business, rounding up or down for convenience of handling orders, etc.
However commendable respondent’s stated desire to "take measures to be able to control the number of I.D. cards issued” may be, the court is unable to understand how the stated criteria justify a denial of petitioner’s application. Not only does respondent fail to show how petitioner falls short of these criteria, but in fact it does not supply, or even refer to, *582 "producer’s 12 month average” in order to permit proper review of its decision.
Furthermore, respondent’s own language casts doubt on the very applicability of these criteria to the present situation. In this connection, respondent has stated in its answering papers:
"12. Nevertheless, the Plan has devised a special procedure pursuant to which particular brokers who have exhibited a need for more than 200 I.D. cards for a single license, can obtain more than 200 I.D. cards upon satisfying the criteria laid done [sic] by the Plan.
"13. When a broker claims he needs more than 200 I.D. cards per location he is required to satisfy the criteria set forth”. (Emphasis supplied.)
It bears noting, however, that petitioner is only seeking 200 cards (not more) for his Newburgh license. Hence, the court cannot fathom why petitioner is being asked to satisfy these criteria when he is not seeking "more than 200 I.D. cards for a single license” or "more than 200 I.D. cards per location”.
Finally and most pointedly, respondent readily admits that "many brokers * * * have several licenses * * * and receive 200 I.D. cards for each license”. In spite of its intimation that petitioner has not satisfied its criteria, respondent does not deny — and curiously does not even mention — that it twice sent petitioner, through its Special Investigations Unit, letters indicating that "his Newburgh office was entitled to an increase of his id. order from 150 to 200”. Thus, in applying for a 200-card allotment, petitioner has sought nothing more than that which "many [other] brokers” enjoy and to which respondent’s own letters indicate he is entitled.
In conclusion, the court, after an examination of the record before it, can find no rational basis for respondent’s denial of petitioner’s request for a 200-card order limit, especially when its own letters indicate he is so entitled (see, Matter of Fuhst v Foley, supra; Matter of Furey v County of Suffolk, supra). Indeed, based on the language quoted above, as well as respondent’s explicit characterization of petitioner’s claim as one for "I.D. cards in excess of 200 cards per license as a matter of right”, the court must wonder if respondent has not totally misconstrued the nature of petitioner’s application.
Accordingly, the petition is granted and respondent’s determination is set aside as null and void.