OPINION OF THE COURT
Robert D. Lippmann, J.
Petitioners bring this CPLR article 78 proceeding in an attempt to undo the sale of the Judson Student House and prevent its demolition and that of other buildings of cultural and historical significance, including the last surviving Manhattan residence of Edgar Allan Poe.
The Attorney General of the State of New York (the Attorney General) and the Commissioner of the Office of Parks, Recreation and Historic Preservation (the Commissioner) jointly cross-move to dismiss the petition. The Acting Commissioner of the New York City Department of Buildings (the DOB) cross-moves to dismiss the petition as against him.
Petitioners are two civic groups and three individuals. The Historic Districts Council, Inc., promotes and upholds the landmarks law. Committee to Save Washington Square, Inc., seeks to protect the environment and preserve the unique nature and historic character of Greenwich Village. Brad Hoylman and Luther Harris are taxpayers and citizens who reside in the immediate vicinity of the proposed demolition and construction. Suzanne Dickerson is a voting member of the Congregation of Judson Memorial Church.
Respondent Judson Memorial Church, Inc. (Judson) owns Judson Memorial Church (the Church) located at 55 Washington Square South. The Church, its Campanile and Hall are listed on the National and State Registers of Historic Places. Adjoining the Church is the Judson Student House (Judson House), described by a senior minister of the Church as a “rabbit warren” of little rooms, expensive to maintain and a drain on the resources of the Church. At a meeting held January 24, 1999, the Congregation voted to authorize the sale of Judson *457 House and an adjoining lot to the New York University School of Law Foundation (NYU Law School) with the intention of using the sale proceeds to make needed repairs and renovations to the Church.
On September 30, 1999 NYU Law School and the Church entered into a contract for the sale of Judson House. NYU Law School and the Church also entered into a development agreement that calls for NYU Law School to demolish Judson House and construct a new building on the property located on West Third Street between Sullivan and Thompson Streets (the Site), where presently there are two vacant lots and four separate buildings: Judson House at 237-239 Thompson Street, and 85, 87 and 89 West Third Street. Although none of these buildings is designated as an historic landmark, No. 85 West Third Street, known as Poe House, is a former residence of Edgar Allan Poe.
In December 1999 Judson submitted a proposed order to the Attorney General for leave to sell Judson House to NYU Law School, as required by Religious Corporations Law § 12 and Not-For-Profit Corporation Law § 511. After reviewing the proposed order and attached exhibits, the Attorney General indicated he had no objection to the granting of judicial approval, writing “no objection” on the proposed order and waiving the statutory notice required by N-PCL 511 (b). The proposed order, thus endorsed, was submitted by Judson ex parte to the Supreme Court, New York County, where it was granted on December 13, 1999. The sale closed December 16, 1999, and the deed transferring the property was recorded the following day.
On May 19, 2000 the State Office of Parks, Recreation and Historic Preservation determined Judson House was eligible for the State Register of Historic Places.
Petitioners contend that Judson in its proposed order failed to inform the Attorney General and the court that the Church buildings are historical landmarks and that Judson House adjoins the Church. They observe that demolition, excavation and construction on the Site could cause damage to the buildings. Their structural engineer reports that the Church building is structurally vulnerable and poor soil conditions could cause it to shift as a result of excavation. The stained glass windows are of especial concern. NYU Law School’s engineer points to the precautionary measures that will be taken to minimize any injurious impact and indicates that he found the Church’s foundation to be structurally sound and the soil condi *458 tions good. As for the stained glass windows, these have been either removed off-site or remounted and protected. This court has enjoined demolition activity at the Site pending determination of the instant petition.
Petitioners maintain that Judson’s application to the Attorney General should have triggered a review by the Commissioner pursuant to PRHPL 14.09 and that the Attorney General, before his endorsement of “no objection,” should have given notice to the Commissioner, who should have undertaken a review and made comments on the proposed plans. Had these events taken place, petitioners argue, the Commissioner would have found adverse impact upon the historic landmark buildings and on buildings eligible for the State Register and would have required the Attorney General to explore alternatives in order to mitigate or avoid the adverse impact. Petitioners further contend the DOB demolition permit was improperly obtained because the project will materially affect a New York City landmark. Moreover, petitioners assert that had Judson not made material omissions of fact regarding the historic landmark status of the Church, the Campanile and the Hall, and regarding the potential eligibility of Judson House for the State Register, then the sale, demolition and construction could not have been lawfully approved by the Attorney General or authorized by the court prior to an assessment of their impact by the Commissioner.
In this article 78 proceeding, petitioners seek a court order (a) annulling and reversing the December 9, 1999 “no objection” endorsement by the Attorney General; (b) annulling the approval of the sale because of noncompliance with N-PCL 511 and PRHPL 14.09; (c) compelling the Attorney General to give notice to the Commissioner pursuant to PRHPL 14.09; (d) compelling the Commissioner to review and comment pursuant to PRHPL 14.09 on the proposed sale, future demolition of Judson House and proposed construction on the Site; and (e) annulling any demolition permits or building permits for any building on the Site. Petitioners argue that the Attorney General’s action pursuant to N-PCL 511 constitutes an action of approval by a State agency for purposes of PRHPL 14.09, and accordingly, the Attorney General violated PRHPL 14.09 in failing to notify the Commissioner and violated N-PCL 511 in waiving statutory notice; that the failure of the Commissioner to undertake a review and to comment upon the application for the sale and demolition of Judson House and construction on the Site is a violation of PRHPL 14.09; that the failure *459 of the Attorney General to explore alternatives that would avoid or mitigate any adverse impact on the cultural and historical property on the Site or in its immediate vicinity is in violation of PRHPL 14.09; and that the failure to provide a hearing on the Judson application at which any interested person could appear is a violation on N-PCL 511 (b).
The Attorney General and the Commissioner (collectively State Respondents) jointly cross-move to dismiss the petition for failure to state a claim upon which relief can be granted. State Respondents correctly characterize the relief petitioners seek as being both in the nature of mandamus to compel and in the nature of mandamus to review. Petitioners ask the court to compel the Attorney General to notify the Commissioner pursuant to PRHPL 14.09 and to compel the Commissioner to review and comment pursuant to that statute. Petitioners also seek relief in the nature of mandamus to review the Attorney General’s December 9, 1999 “no objection” endorsement.
Mandamus to compel is a judicial command to an officer or body to perform a specified ministerial act that is required by law to be performed. (See, Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88.) Only ministerial acts that involve no exercise of judgment or discretion are subject to mandamus to compel. (Matter of Gimprich v Board of Educ., 306 NY 401.) The extraordinary relief is available only “to compel the performance of a purely ministerial act where there is a clear right to the relief sought.” (Matter of Legal Aid Socy. v Scheinman, 53 NY2d 12, 16.) “The right to performance ‘must be so clear as not to admit of reasonable doubt or controversy.’ ” (Matter of Association of Surrogates & Supreme Ct. Reporters v Bartlett, 40 NY2d 571, 574.) It is the position of the State Respondents that the relief requested by petitioners will not lie because the acts they seek to compel are not required by law.
Petitioners contend the Attorney General’s role under N-PCL 511 triggered PRHPL 14.09 and the obligations imposed upon the Attorney General and the Commissioner thereunder. The question presented is whether the role of the Attorney General under N-PCL 511 (b) constitutes an action of approval by a State agency for purposes of triggering PRHPL 14.09 and the duties imposed thereunder.
It is not disputed that Religious Corporations Law § 12 required Judson to obtain leave of court pursuant to N-PCL 511 to sell Judson House. N-PCL 511 provides:
“(a) A corporation required by law to obtain leave of court to sell, lease, exchange or otherwise dispose *460 of all or substantially all its assets, shall present a verified petition to the supreme court of the judicial district, or county court of the county, wherein the corporation has its office or principal place of carrying out the purposes for which it was formed * * *
“(b) Upon presentation of the petition, the court shall direct that a minimum of fifteen days notice be given by mail or in person to the attorney general, and in its discretion may direct that notice of the application be given, personally or by mail, to any person interested therein, as a member, officer or creditor of the corporation. The court shall have authority to shorten the time for service on the attorney general upon a showing of good cause. The notice shall specify the time and place, fixed by the court, for a hearing upon the application. Any person interested, whether or not formally notified, may appear at the hearing and show cause why the application should not be granted.”
Under N-PCL 511 (b), once a petition is filed with the court, the Attorney General is to be given at least 15 days notice of hearing on the application. However, it is the practice in most courts, including this court, for the petition to be submitted to the Attorney General for review before it is filed with the court. Upon receipt of the application, the Attorney General reviews the papers and ensures that all the necessary documents and exhibits in support of the petition are included and that there is full compliance with N-PCL 510 and 511. After such review, if the Attorney General has no objection to the transaction, he provides written confirmation, usually by means of a “no objection” endorsement on the proposed order. Additionally, he waives the statutory notice since his participation in the N-PCL 511 application has now come to an end. The petition to sell Judson House in December 1999 went through this procedure and, contrary to petitioners’ assertion, the Attorney General’s waiver of statutory notice was not made in response to any request by Judson. Judson then submitted the petition ex parte to the Supreme Court where it was granted on December 13, 1999.
Petitioners maintain that the Attorney General’s role under N-PCL 511, as described above, is an action of approval. The State Respondents argue that it is the court, not the Attorney General, that grants the petition and, accordingly, the Attorney General’s review does rise to the level of action of approval. Resolution of this issue will determine whether the obligations imposed under PRHPL 14.09 are invoked.
*461 PRHPL 14.09 has the following heading and provides as follows:
“State agency activities affecting historic or cultural property; notice and comment
“1. As early in the planning process as may be practicable and prior to the preparation or approval of the final design or plan of any project undertaken by a state agency, or prior to the funding of any project by a state agency or prior to an action of approval or entitlement of any private project by a state agency, the agency’s preservation officer shall give notice, with sufficient documentation, to and consult with the commissioner concerning the impact of the project if it appears that any aspect of the project may or will cause any change, beneficial or adverse, in the quality of any historic, architectural, archeological, or cultural property that is listed on the national register of historic places or property listed on the state register or is determined to be eligible for listing on the state register by the commissioner. Generally, adverse impacts occur under conditions which include but are not limited to (a) destruction or alteration of all or part of a property; (b) isolation or alteration of its surrounding environment; (c) introduction of visual, audible, or atmospheric elements that are out of character with the property or alter its setting; or (d) neglect of property resulting in its deterioration or destruction. Every agency shall fully explore all feasible and prudent alternatives and give due consideration to feasible and prudent plans which avoid or mitigate adverse impacts on such property * * *
“2. The commissioner shall undertake a review and make comment within thirty days of receipt of notice, with sufficient documentation, of a proposed project as to whether or not such proposed project may have an adverse impact on any property that is listed on the national register of historic places or on the state register or is determined to be eligible for the state register by the commissioner. The comment shall be put on file and shall be available to the public on request. If it is determined that a project may have an adverse impact on such property, the commissioner shall so notify the agency in writing. Upon receipt of such notification from the commissioner, the agency shall immediately contact the commissioner for the purpose of exploring alternatives which would avoid or mitigate adverse impacts to. such property consistent with the policy and provisions of this article and other provisions of law relating to historic preservation. To the fullest extent practicable, it is the responsibility of every state agency, consistent *462 with other provisions of law, to avoid or mitigate adverse impacts to registered property or property determined eligible for listing on the state register by the commissioner.” (Emphasis supplied.)
PRHPL 14.09 is triggered when a project involves the State, through State funding or financial assistance or through the issuance by a State agency of permits, licenses or approvals. It is not disputed that the project proposed for the Site involves no State funding or financial assistance. Petitioners argue, however, that a review by the Commissioner or by the State Historic Preservation Officer was triggered by the Attorney General’s action of approval of the transaction, as was the Attorney General’s duty to notify the Commissioner. The State Respondents maintain the Attorney General’s obligation to notify the Commissioner “prior to an action of approval or entitlement of any private project by a state agency” (PRHPL 14.09 [1]) does not apply to his limited involvement in reviewing the proposed transfer from Judson to NYU Law School under Religious Corporations Law § 12 and N-PCL 511. Furthermore, since the Attorney General did not engage in an action of approval, even if he had been aware that Judson Church, the Campanile and Hall were historic landmarks and that they might be affected by the sale, he still would not have been required to notify the Commissioner.
Under Religious Corporations Law § 12 (1), a “religious corporation shall not sell, mortgage or lease for a term exceeding five years of its real property without applying for and obtaining leave of the court therefor” pursuant to N-PCL 511. N-PCL 511 (a) requires such a corporation to present “a verified petition to the supreme court.” Because the Attorney General reviews the application before it is filed with the court, the procedure under N-PCL 511 (b) has been chronologically reversed. But the altered procedural sequence does not alter the respective substantive roles of the court and the Attorney General. If the Attorney General has no objection to the transaction, that is, if he approves of it, this “approval” standing alone does not constitute an order of approval of the petition. The Attorney General’s approval, without more, does not legally suffice to transfer the property, nor will it have granted the relief the petitioner sought under N-PCL 511 and certainly it will not be sufficient to comply with Religious Corporations Law § 12. The Attorney General’s approval under N-PCL 511 does not have the force of law; it is a recommendation to the court. Only the court is authorized under N-PCL 511 to grant or deny the application.
*463 The limited role played by the Attorney General under N-PCL 511 is more clearly seen and better appreciated when contrasted with his authority under, for example, Public Officers Law § 17, a statute that expressly mandates that the Attorney General “determine” and “shall give his approval,” where appropriate, to defend certain public officers and employees against whom legal action has been brought arising from their conduct within the scope of their public employment. (See, Public Officers Law § 17 [2] [b]; [3] [b].) Viewed against this clear statutory grant of power, the role of the Attorney General under N-PCL 511 might aptly be described as advisory. Indeed, it is neither final nor binding since only the court is empowered to grant the petition. Being neither final nor binding, it is not susceptible to judicial review under article 78. (See, CPLR 7801, 217; City of New York v State of New York, 61 Misc 2d 517, affd 49 AD2d 644, mod on other grounds 40 NY2d 659; Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88, supra.) Where the Attorney General’s “approval” is neither final nor binding nor judicially reviewable, it is not an “action of approval * * * by a state agency.” (PRHPL 14.09 [1].) Accordingly, the Attorney General’s “no objection” endorsement of December 9, 1999 did not constitute State involvement within the meaning of PRHPL 14.09.
Since the sale of Judson House is a purely private transaction that does not entail State funding or State financial assistance or the issuance of an approval by a State agency, PRHPL 14.09 is not implicated. The Attorney General therefore had no obligation under the statute to notify the Commissioner nor had the Commissioner any statutory obligation to review and to comment upon the sale of Judson House, its future demolition and the proposed construction on the Site.
There is no clear duty directed by law that requires the Attorney General and the Commissioner to perform the acts demanded by petitioners. Accordingly, mandamus to compel such action will not lie and therefore is denied. Further, petitioners seek judicial review of the Attorney General’s “no objection” endorsement of December 9, 1999. Article 78 limits judicial review to final determinations of administrative bodies or officers. Since the Attorney General’s endorsement was not a final determination, mandamus to review will not lie. In any event, as the instant petition was brought July 31, 2000, mandamus to review would be time barred by the four-month Statute of Limitations (CPLR 217). The State Respondents’ cross motion is granted.
*464 Finally, although petitioners seek a court order annulling any demolition or building permit issued by the DOB, NYU Law School has neither applied for nor received any demolition permit for Judson House. Accordingly, petitioners’ application is premature. The cross motion of Richard Visconti, Acting Commissioner of the DOB, to dismiss the petition as against him is granted.
The petition is dismissed in its entirety. The preliminary injunction is vacated.
[Portions of opinion omitted for purposes of publication.]