[741 NYS2d 103]

Sheffield Towers Rehabilitation and Health Care Center et al., Respondents, v Antonia Novello, as Commissioner of the New York State Department of Health, et al., Appellants.

Second Department, April 22, 2002

## APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General,* New York City (*Marion R. Buchbinder, Michael S. Belohlavek* and *David Axinn* of counsel), for appellants.

*Salamon, Gruber, Newman & Blaymore, P.C.,* Roslyn Heights (*Sanford Strenger* of counsel), for respondents.

## OPINION OF THE COURT

TOWNES, J.

In this action for an injunction pursuant to Public Health Law § 2801-c and a declaratory judgment, the plaintiffs, who seek to construct a nursing home in Freeport, challenge a temporary moratorium imposed by the New York State Department of Health (hereinafter the DOH) upon the processing of nursing home construction applications pending on August 3, 2000. The verified complaint, filed on November 29, 2000, seeks a judgment declaring that the moratorium is unconstitutional and in violation of article 28 of the Public Health Law, and an injunction against the application of the moratorium to the plaintiffs' project.

In December 1991, the plaintiffs submitted to the DOH an "Establishment/Construction Certificate of Need" application for construction of a 233-bed residential health care facility in the Village of Freeport. The plaintiffs are required to secure the approval of the Public Health Council for the establishment of a nursing home (Public Health Law § 2801-a), and the separate approval of the Commissioner of Health for the construction of the facility (Public Health Law § 2802). In 1993,

the plaintiffs' application received conditional approval from both the DOH and the Public Health Council. Almost three years later, the plaintiffs sought to amend their application and to extend the time by which they were required to start construction of the project. In May 1999, the plaintiffs sought review and approval of proposed modifications to the project. On December 7, 1999, the Public Health Council and the Commissioner of Health, with the advice and consent of the State Hospital Review and Planning Council (hereinafter the Planning Council) and the Health Systems Agency, proposed to approve the project, conditioned upon the plaintiffs' fulfillment of nine specified contingencies and the commencement of construction on or before June 1, 2001.

Prior to the plaintiffs' fulfillment of the contingencies, the Director of the DOH Office of Health Systems Management (hereinafter the Director) announced a temporary moratorium on the processing of all approved nursing home projects which had yet to receive final approval and begin construction. This moratorium was based upon a 1997 report to the Planning Council and the Public Health Council by the Planning Council's Workgroup on Subacute Care, according to which the Commissioner of the DOH determined that new standards should be implemented for determining the need for nursing homes throughout the state. Various factors pointed to a potential future surplus of such facilities to care for the elderly, and the DOH concluded that the State's interests were threatened by a potential oversupply of nursing home beds.

By letter dated August 24, 2000, the DOH advised the plaintiffs that their project was subject to the moratorium. In November 2000, the plaintiffs commenced this action and subsequently moved, inter alia, for a preliminary injunction pursuant to Public Health Law § 2801-c enjoining the defendants from applying the moratorium to their application. The plaintiffs argued that the moratorium itself, and the application of the moratorium to them, violated article 28 of the Public Health Law and the regulations promulgated thereunder. The defendants cross-moved for dismissal of the complaint under CPLR 3211 (a) (7). The Supreme Court granted the plaintiffs' motion, holding that the moratorium, as enunciated by the Director, was inapplicable to the plaintiffs' project, and denied the cross motion. In doing so, the Supreme Court prematurely determined the plaintiffs' Public Health Law § 2801-c claim by declaring that the inclusion of the plaintiffs' project in the moratorium was "irrational and without founda-

tion in fact," and that the plaintiffs had "established a violation of article 28 of the Public Health Law" (*see Cellular Tel. Co. v Village of Tarrytown,* 210 AD2d 196, 197). The Supreme Court preliminarily enjoined the DOH from including the plaintiffs' project in the moratorium and directed the defendants to continue processing the plaintiffs' application. This was error.

Public Health Law § 2801-c provides a procedural vehicle for the plaintiffs to seek to "enjoin asserted violations * * * by the Public Health Council or the Department of Health of provisions of article 28 of the Public Health Law" (*Matter of Hamptons Hosp. & Med. Ctr. v Moore,* 52 NY2d 88, 97). To be entitled to a preliminary injunction, the plaintiffs were required to demonstrate a likelihood of success on the merits, irreparable injury if the provisional relief is withheld, and a balance of the equities in their favor (*see Doe v Axelrod,* 73 NY2d 748). The plaintiffs did not make a prima facie showing that the defendants violated or threatened to violate any provision of article 28 of the Public Health Law (Public Health Law § 2801-c; *see Doe v Axelrod, supra*), and therefore, they did not demonstrate a likelihood of success on the merits and were not entitled to a preliminary injunction.

Public Health Law § 2801-a (1) provides that no hospital shall be established except with the written approval of the Public Health Council (*see* Public Health Law § 2801 [1] ["hospital" includes a nursing home]). The Public Health Council "shall not approve a certificate of incorporation, articles of organization, or application for establishment unless it is satisfied * * * as to * * * the public need for the existence of the institution at the time and place and under the circumstances proposed" (Public Health Law § 2801-a [3]). In addition, construction of a nursing home requires the approval of the Commissioner of the DOH, who is under a similar mandate of satisfaction as to the public need therefor (Public Health Law § 2802). The Public Health Council and the DOH have a statutory duty to approve the establishment and construction of a nursing home only where they are convinced that there is a public need therefor (Public Health Law § 2801-a [3]; *Matter of Hamptons Hosp. & Med. Ctr. v Moore, supra* at 93).

Because of the uncertainty regarding anticipated demand for nursing home beds generated by the report of the Workgroup on Subacute Care, the DOH properly exercised its discretion to delay a decision on the pending applications in order to study public need (*see Matter of Jay Alexander Manor v Novello,* 285

AD2d 951, *lv denied* 97 NY2d 610; *Matter of United Methodist Retirement Community Dev. Corp. v Axelrod,* 110 AD2d 292). The declaration of a moratorium was within the Commissioner's inherent discretionary power and was "consistent with the proper exercise of [a] * * * statutory duty only to authorize construction of necessary facilities" (*Matter of Hamptons Hosp. & Med. Ctr. v Moore, supra* at 93). Prior to the imposition of the temporary moratorium by the DOH in the instant case, the plaintiffs had received only conditional and contingent approval of the project from the agencies. Contrary to the plaintiffs' contention, this was not tantamount to final approval of the certificate of need application. The agencies have the "power to re-evaluate an initial determination of public need for establishment of a hospital where [the] initial determination had not received final approval" (*Matter of Hamptons Hosp. & Med. Ctr. v Moore, supra* at 91; *see also, Matter of United Methodist Retirement Community Dev. Corp. v Axelrod, supra*). When the temporary moratorium was imposed on August 3, 2000, the plaintiffs' application was pending and subject to the moratorium.

Contrary to the argument of the plaintiffs, the temporary moratorium, as announced by the DOH, was not a rule or change of practice, but was rather a temporary suspension of the processing of applications. A temporary suspension, imposed for a valid and reasonable purpose in keeping with the agencies' responsibilities under the statute, is within the authority of the DOH so long as *its* duration is confined to that reasonable period of time needed to review and revise the public need methodology (*see Matter of Jay Alexander Manor v Novello, supra; Cellular Tel. Co. v Village of Tarrytown,* 209 AD2d 57).

The nursing home industry is subject to extensive state regulation designed to closely tailor supply to demand in order to protect the vital public interest in containing health care costs (*see Birnbaum v State of New York,* 73 NY2d 638, *cert denied* 494 US 1078). "It requires no documentation to demonstrate the catastrophic economic consequences both to consumers and to providers of health care which might attend the construction of unneeded health care facilities" (*Matter of Hamptons Hosp. & Med. Ctr. v Moore, supra* at 94). There being no violation or threatened violation of article 28 of the Public Health Law, the court should not have enjoined the DOH from discharging its responsibility pursuant to Public Health Law § 2802. Moreover, the court should have granted that

branch of the defendants' cross motion which was to dismiss the third cause of action of the complaint, which sought a permanent injunction under Public Health Law § 2801-c. Accordingly, the order is reversed insofar as appealed from, on the law, and the plaintiffs' motion is denied in its entirety. Further, that branch of the defendants' cross motion which was to dismiss the third cause of action asserted in the complaint is granted. The Supreme Court denied the cross motion of the defendants for dismissal of the first and second causes of action in the complaint, which allege that the moratorium is illegal and unconstitutional. The defendants did not challenge the propriety of that determination in their brief on appeal, and therefore, that portion of the order of the Supreme Court is not addressed herein.

McGINITY, J. (concurring in part and dissenting in part.) In December 1991, the plaintiffs submitted to the New York State Department of Health (hereinafter the DOH) an "Establishment/Construction Certificate of Need" application for the construction of a nursing home in Freeport. The plaintiffs' application received conditional approval in 1993 from both the DOH and the Public Health Council. The approval of both is required. However, the project was reconfigured and, in April 1997, was assigned a new project number. On December 7, 1999, the Public Health Council and the Commissioner of Health issued a resolution proposing to approve the project providing nine specified contingencies were met and conditioned upon the commencement of construction on or before June 1, 2001. Shortly thereafter, all but one of the contingencies were satisfied by the plaintiffs. The remaining contingency required the plaintiffs to obtain a mortgage commitment from an approved lender.

However, on August 3, 2000, prior to the fulfillment of all the contingencies, the Director of the DOH Office of Hospital Systems Management announced a moratorium affecting all approved nursing home projects which had yet to receive final approval and begin construction. This moratorium was based on a 1997 State Hospital Review and Planning Council's Workgroup report on Subacute Care. The Commissioner of the DOH determined that new standards should be implemented for determining need for nursing homes. By letter dated August 24, 2000, the DOH advised the plaintiffs that their project was subject to the moratorium, stating, "[w]hile the temporary moratorium is in place, the Department will undertake a

review of the need for additional nursing home beds in the state, and will consider possible changes to the need formula."

In November 2000, the plaintiffs commenced the instant action, inter alia, for a declaration that the moratorium did not apply to them and subsequently moved, among other things, for injunctive relief enjoining the DOH from applying the moratorium to their application. The Supreme Court granted the plaintiffs' motion, finding that the moratorium was inapplicable to the plaintiffs' project.

While I agree with the majority that the moratorium applies to the plaintiffs and that the DOH properly exercised its discretion to delay a decision on the pending application to further determine public need (*see Matter of Hamptons Hosp. & Med. Ctr. v Moore,* 52 NY2d 88, 93; *Matter of Jay Alexander Manor v Novello,* 285 AD2d 951, lv *denied* 97 NY2d 610), I would remit the matter to the DOH with a direction that it complete its study and make its determination as to necessity within a reasonable time. In the field of moratoria, it is well settled that the life of a moratorium may not exceed a reasonable period of time (*cf. Cellular Tel. Co. v Village of Tarrytown,* 209 AD2d 57, 66; *Mitchell v Kemp,* 176 AD2d 859, 860). Given the length of time involved in the application process and the plaintiffs' substantial investment with respect thereto, and the fact that the moratorium has been imposed since August 2000, fairness requires that a determination as to necessity be rendered by the DOH promptly.

Accordingly, I would reverse the order insofar as appealed from and remit the matter to the DOH for it to complete its study and render its determination within 60 days of this opinion and order.

RITTER, J.P., and GOLDSTEIN, J., concur with TOWNES, J.; McGINITY and H. MILLER, JJ., concur in part and dissent in part and vote to reverse the order and remit the matter to the New York State Department of Health for a determination on the issue of necessity in a separate opinion by McGINITY, J.

Ordered that the order is reversed insofar as appealed from, on the law, with costs to the defendants, the motion for a preliminary injunction is denied in its entirety, that branch of the defendants' cross motion which was to dismiss the third cause of action asserted in the complaint is granted, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith.