■ In the Matter of RITA LEVY, Petitioner, v WILLIAM J. DAVIS, Respondent. [756 NYS2d 35] —In this CPLR article 78 proceeding, the petition seeking a writ of mandamus compelling respondent, Supreme Court Justice William J. Davis, to hold a bedside hearing on the application of petitioner's guardian to allow Ms. Levy to be involuntarily placed in a nursing home and to vacate respondent's December 5, 2002 order referring the matter for assignment to a special referee granted, respondent's cross motion to dismiss the petition denied, and respondent directed to hold a hearing on the guardian's application forthwith and in no event later than 14 days from the date hereof, and to render a decision within the time set by Mental Hygiene Law § 81.13, all without costs.

Petitioner Rita Levy, a person adjudicated to be incapacitated, who suffers from diabetes and dementia, was admitted to St. Luke's-Roosevelt Hospital on September 5, 2002, because, according to her court-appointed guardian, she had refused insulin treatments at home. Memos by hospital medical personnel describe the dangers attendant to petitioner's failure to control her diabetes at home and urge that placement in a nursing home, where her diabetes could be effectively monitored and controlled, is the only "safe, appropriate discharge plan."

Given this state of affairs, on November 12, 2002, petitioner's guardian commenced a proceeding pursuant to Mental Hygiene Law § 81.36, for modification of the guardianship order to permit permanent placement of petitioner in a nursing home. However, petitioner's court-appointed attorney informed the court that Ms. Levy had refused voluntary placement in a nursing home and wanted to return to her Manhattan apartment. Mental Hygiene Law § 81.36 (c) requires that a hearing be held on any application for modification of guardianship powers, and petitioner's attorney requested that the section 81.36 hearing be held at petitioner's hospital bedside because petitioner could not be safely transported to court.

Instead of holding a hearing, respondent issued an order, dated December 5, 2002, referring the question of whether petitioner should be involuntarily placed in a nursing home to a special referee "to hear and report." The order further provided that, "[p]ending receipt of the report and a CPLR 4403 motion, final determination of this motion is held in abeyance." The special referee assignment calendar scheduled the matter for February 27, 2003, more than three months after the Mental Hygiene Law § 81.36 modification application was filed. Petitioner's counsel has been informed that she may present her request for a bedside hearing at the time, with the result that a date for a hearing on the substantive question of petitioner's placement has not yet been scheduled. In the meantime, petitioner remains hospitalized and continues to incur mounting hospital charges, since she may not be discharged until the issue of whether she should be placed in a nursing home is resolved. According to the petition, as of January 28, 2003—when the instant article 78 petition was filed—petitioner's hospital bills had already exceeded the six-figure level.

Petitioner seeks a writ of mandamus vacating respondent's December 5, 2002, order and compelling respondent to hold a hearing under Mental Hygiene Law § 81.36 on whether petitioner should be involuntarily placed in a nursing home. Petitioner argues that respondent failed to comply with the time limits established for article 81 proceedings and exceeded his authority by referring the matter of her placement to a special referee. We agree.

Mental Hygiene Law § 81.13 requires that, except "for good cause shown," proceedings brought "under this article" are to be afforded "preference over all other causes in the court"; that requisite article 81 hearings or trials "shall be conducted within the time set forth in subdivision (a) of section 81.07" (no more

than 28 days from the date the petition is filed); and that a decision "shall be rendered within forty-five days of the date of the signing of the order to show cause * * *."

Contrary to respondent's contention, there is nothing in article 81 that suggests that the time limitations established by Mental Hygiene Law § 81.13 are applicable only to guardianship appointment proceedings and not to proceedings brought pursuant to section 81.36 to modify guardianship powers. As noted, section 81.13, by its terms, encompasses proceedings "under this *article*" (emphasis added). Moreover, there is no principled reason why the time limits mandated by section 81.13 should apply to appointment but not modification proceedings. Both proceedings pertain to an individual's competency and capacity to live as he or she wishes and conduct his or her own affairs. Both proceedings may result in interference with such an individual's independence and ability to live according to his or her own desires. The issue presented by the guardian in this case—whether petitioner should be involuntarily placed in a nursing home—no doubt presents the possibility of an even greater incursion into petitioner's personal liberty than the initial appointment of a guardian did (*see e.g. Matter of Grinker [Rose],* 77 NY2d 703, 710). There is no reason to conclude that section 81.36 modification proceedings should not require similar due process protections and be subject to the same procedural requirements as attendant to appointment proceedings, including expedited hearings and decisions. The need for expedition is particularly apparent in this case, because each day that passes without resolution of the substantive issue results in petitioner's continued hospitalization and the accumulation of ever more astronomical hospital bills.

Since the application to modify the guardian's powers was filed and the order to show cause was signed on or about November 12, 2002, and since no good cause for extending the time limits was shown, respondent was required by Mental Hygiene Law § 81.13 to conduct a hearing on the matter no later than December 10, 2002, and to render a decision no later than December 27, 2002. In the absence of a showing of good cause, respondent did not have discretion as to whether or not to comply with those time limits.

In addition, respondent exceeded his authority by referring the issue of petitioner's placement to a special referee. As an initial matter, article 81 of the Mental Hygiene Law does not authorize such a reference. Mental Hygiene Law § 81.11 requires that a hearing be held before a guardian may be ap-

pointed and that such hearing "must be conducted in the presence of the person alleged to be incapacitated * *. * so as to permit the *court* to obtain its own impression of the person's capacity" (Mental Hygiene Law § 81.11 [c]; emphasis added). In Comments to section 81.11, the Law Revision Commission emphasized the overarching value in a court having the opportunity to observe, firsthand, the allegedly incapacitated person, particularly compared to simply reviewing a written report on the person's condition: "Judges have substantial expertise in evaluating the persons who testify in court not only by their testimony but also by their appearance and demeanor. That expertise and experience prove very valuable in observing a person alleged to be incapacitated particularly because disparities often exist between what is written on paper and what is deduced from observing the person first hand. Information on paper tends to underrate capacity * * *." (Law Revision Commission Comments, reprinted following McKinney's Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.11, at 323.) For the same reasons noted above, there is no reason to believe that the Legislature believed that firsthand observation by the court was any less necessary or important in guardianship modification proceedings such as the present one, in which the individual's entire living environment is subject to change against his or her wishes, than in initial guardianship appointment proceedings.

Respondent's reliance on CPLR 4001 as providing authorization for referral of the issue of whether petitioner should be placed in a nursing home to a referee is misplaced. CPLR 4001 permits a court to appoint a referee "to determine an issue, perform an act, or inquire and report in any case *where this power was heretofore exercised and as may be hereafter authorized by law*" (emphasis added). Respondent has cited no case, nor have we found any, upholding a referral of an article 81 proceeding involving an individual's competency or capacity to a referee. In view of the Legislature's emphasis on the importance of the court's firsthand observation of the subjects or article 81 proceedings, we can conceive of no basis to conclude that such a referral should be authorized in this case, particularly in view of the acute need to expedite a resolution of petitioner's placement.

A writ of mandamus under article 78 is appropriate to require performance of a specified ministerial act that is required by law to be performed (*Matter of Hamptons Hosp. & Med. Ctr. v Moore,* 52 NY2d 88, 96). Because the law required respondent—not a referee—to hold a hearing on the guardian's

Mental Hygiene Law § 81.36 application within the time limits established by Mental Hygiene Law § 81.13, a writ of mandamus is appropriate in this case. The petition is therefore granted. Concur—Nardelli, J.P., Buckley, Rosenberger and Marlow, JJ.